OPINION
{¶ 1} Defendant-appellant, Lawrence Mark Levine, appeals from the March 10, 2002 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, overruling in part appellant's objections to the magistrate's February 28, 2001 decision. We note that appellee, Terri Lynn Levine, filed a notice of appeal on April 22, 2002. Appellee, however, has neither assigned errors nor filed a brief in support of her notice of appeal. Pursuant to Loc.R. 9(D) of the Tenth District Court of Appeals, we dismiss appellee's appeal.
{¶ 2} The parties were married on August 7, 1988, and have two minor children. The marriage was terminated by decree of divorce on November 22, 1996, and appellant was ordered to pay $4,904.42 per month in child support. In calculating the original amount of child support, the court had determined that appellant's annual gross income was $410,000. Appellant was also ordered to pay the mortgage on the former marital residence, which appellee occupies with the children. Appellant was also ordered to pay other sums of money to appellee and, on January 9, 1997, appellant submitted a check to appellee in the amount of $86,921.
{¶ 3} In the wake of the divorce decree, the parties filed several motions. On January 23, 1997, appellee filed a motion for contempt, in which she argued that appellant's $86,921 check did not satisfy the obligations in the divorce decree. On October 15, 1997, appellant filed a motion to modify parental rights, although this issue was ultimately settled by agreement of the parties. On August 21, 1998, appellee filed a motion to modify child support, asserting that there had been a significant change in appellant's income warranting a recalculation of child support. In January and February 2000, the magistrate held a hearing on several issues including appellant's motion to modify child support and appellant's motion for contempt, which was referenced to the magistrate as an accounting of the property settlement.
{¶ 4} By decision dated February 28, 2001, the magistrate recommended, among other things, that child support be increased to $7,500 per month, retroactive to October 15, 1997, the date that appellant had filed his motion to modify parental rights. Although she did not show worksheet calculations for 1997 and 1998, the magistrate determined that appellant's income had remained fairly consistent in 1997, 1998 and 1999. Based upon her calculations using the child support worksheet for 1999, the magistrate determined that appellant's total adjusted gross income was $808,098 and that appellant would owe $9,620.92 per month for both children. The magistrate further determined, however, that the worksheet amount was unjust, inappropriate and not in the best interests of the children, and the magistrate recommended a downward deviation in the amount of $2,120.92 per month for an adjusted child support award of $7,500 per month. With regard to the accounting, the magistrate also concluded that appellant had unlawfully withheld $21,320 from appellee based upon the mistaken belief, as a result of appellant's misinterpretation of the divorce decree, that it was his separate property.
{¶ 5} Appellant filed objections to the magistrate's decision on April 13, 2001. In pertinent part, appellant argued that the magistrate erred in modifying the child support award retroactive to a date prior to appellee's motion for modification of child support. Appellant further argued that the magistrate erred in calculating the amount of child support because (1) the award was based upon appellant's 1999 income and did not consider appellant's income in 1996, 1997 and 1998, and (2) she determined that appellant had rental income in excess of his rental expenses. Appellant also argued that the magistrate awarded child support in an amount that exceeded the standard of living established by the parties during the marriage and exceeded the financial needs of the children. As to the accounting, appellant argued that the magistrate erred in failing to credit appellant with $21,320 for his separate property.
{¶ 6} The trial court sustained appellant's objection with regard to retroactivity, and ordered that the modified child support award be applied retroactively to August 21, 1998, the date that appellee filed her motion to modify child support. The trial court overruled appellant's objections with regard to the calculation of child support and the accounting.
{¶ 7} As to the amount of child support, the trial court performed its own calculations and determined that appellant's total gross income was $845,818 in 1997, $782,689 in 1998, and $808,097 in 1999. The trial court noted that the magistrate did not complete worksheet calculations for 1997 and 1998, opting instead to use the 1999 worksheet. The court concluded, however, that "it is clear that the end result for each year is fairly consistent" and that, with regard to appellant's income, "[w]hen compared to the number used by the magistrate ($808,098), it is apparent that the Defendant actually received a benefit from the magistrate's decision to use the 1999 figures." In light of this conclusion and the fact that the magistrate deviated downward from the calculated amount, the trial court overruled appellant's objections to the magistrate's decision to rely solely upon 1999 calculations.
{¶ 8} With regard to appellant's objection based upon rental property, the trial court concluded that the record supported the magistrate's determination that appellant earned $45,458 in rental income. Appellant had sought to introduce additional evidence in an effort to establish that his accountant had made an error on appellant's 1998 tax return with respect to rental income. The court concluded that, with reasonable diligence, appellant could have produced the evidence for the magistrate's consideration. Accordingly, the court refused to hear additional evidence proffered by appellant and overruled appellant's objection.
{¶ 9} As to appellant's argument that the increased child support award exceeds the standard of living established by the parties during the marriage and exceeds the financial needs of the children, the trial court noted that, had the parties remained in the marriage, "the children would be enjoying quite a luxurious lifestyle." The court concluded that the magistrate's child support calculation was "fair and equitable under the circumstances of this case," and, therefore, overruled appellant's objection.
{¶ 10} With regard to the accounting and appellant's argument that, pursuant to the divorce decree, he was entitled to $21,319.75 in separate property, the trial court agreed with the magistrate that appellant had misread the decree and wrongfully withheld the sum. Accordingly, the trial court overruled appellant's objection regarding the issue of separate property.
{¶ 11} On appeal, appellant now assigns the following errors:
{¶ 12} "Assignment of Error Number One
{¶ 13} "The trial court erred in calculating child support.
{¶ 14} "Second Assignment of Error
{¶ 15} "The trial court erred in finding that Mr. Levine had rental income in excess of his rental expenses and, in the alternative, failing to consider the testimony of Mr. Levine's tax accountant.
{¶ 16} "Third Assignment of Error
{¶ 17} "The trial court erred in failing to credit Mr. Levine with his separate property.
{¶ 18} "Fourth Assignment of Error
{¶ 19} "The trial court erred in failing to credit Mr. Levine with the award of attorney fees made for Plaintiff's frivolous conduct."
{¶ 20} A trial court has considerable discretion in matters of calculating child support and, absent an abuse of discretion, a child support order will not be disturbed on appeal. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
{¶ 21} By his first assignment of error, appellant contends that the trial court erred in calculating child support. Appellant contends that the trial court used incorrect income figures in its calculations. Specifically, appellant argues that the trial court erred when it imputed bonus income to appellant retroactively. Appellant also argues that the trial court erred in finding that loans and distributions were income.
{¶ 22} R.C. 3113.215 governs the procedures a court must follow in calculating and awarding child support.[1] "Its provisions are mandatory in nature and must be followed literally and technically in all material respects." Murray v. Murray (1999), 128 Ohio App.3d 662, 666. See Marker v. Grimm (1992), 65 Ohio St.3d 139, 141-142. "[W]hen the standard provision for support as provided in the statute is not specifically followed by the trial court, the law requires any such deviation to be explicitly explained after following specific procedures." Marker, at 142. "The terms of R.C. 3113.215 are very specific and are mandatory in nature, and the trial court's failure to comply with the literal requirements of the statute constitutes reversible error." Marker, at 143.
{¶ 23} Pursuant to R.C. 3113.215(B)(1), the court must calculate an obligor's child support obligations in accordance with the basic child support schedule and the applicable worksheet. The amount shown on the worksheet "is rebuttably presumed to be the correct amount of child support due." Id. In addition, where the parties' combined gross incomes exceed $150,000, the court must follow R.C. 3113.215(B)(2)(b), which requires a calculation of the child support obligation using the applicable worksheet and sets forth the following method for determining the award:
{¶ 24} "(b) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. When the court * * * determines the amount of the obligor's child support obligation for parents with a combined gross income greater than one hundred fifty thousand dollars, the court * * * shall compute a basic combined child support obligation that is no less than the same percentage of the parents' combined annual income that would have been computed under the basic child support schedule and under the applicable worksheet in division (E) of this section, through line 24, or in division (F) of this section, through line 23, for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount and enters in the journal the figure, determination, and findings."
{¶ 25} We conclude that the trial court failed to comply with the statutory mandates when it ordered the increase in support.
{¶ 26} In the instant action, the magistrate completed a worksheet for 1999. The magistrate found that "[d]efendant's income has remained fairly consistent for the last three calendar years[,]" and she declined to complete worksheets for 1997 and 1998. In reviewing the magistrate's decision, the trial court noted that "the magistrate based her calculations solely on the income figures from 1999 rather than looking at previous years separately or using an average." In an effort to remedy this approach, the trial court noted that it "independently calculated Defendant's income for the years 1997, 1998, and 1999 based on the income figures from the previous years." Although the trial court performed some calculations in an effort to ascertain appellant's income for each of the three years at issue and concluded that "the end result for each year is fairly consistent," the trial court apparently did not complete worksheets for those years, nor did the trial court rely upon the magistrate's 1999 worksheet, as the trial court arrived at a different gross income figure in 1999 than the magistrate had calculated in the worksheet. Based upon the record before us, it appears that the trial court did not use a worksheet in its calculation of support. We conclude that this approach runs afoul of the specific statutory requirements in R.C. 3113.215 for computing an award of child support.
{¶ 27} We address appellant's specific substantive arguments, as they impact upon the trial court's calculation of the support obligations pursuant to R.C. 3113.215.
{¶ 28} Appellant argues that the trial court erred in finding that shareholder loans and distributions to appellant were income. Appellant argues that the loans and distributions were nonrecurring items of income. We disagree.
{¶ 29} R.C. 3113.215(A)(2) defines gross income, in relevant part, as follows:
{¶ 30} "(2) `Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during the calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section * * *.
{¶ 31} " `Gross income' does not include any of the following:
{¶ 32} "* * *
{¶ 33} "(e) Nonrecurring or unsustainable income or cash flow items."
{¶ 34} R.C. 3113.215(A)(11) defines nonrecurring or unsustainable income as follows:
{¶ 35} "(11) `Nonrecurring or unsustainable income or cash flow item' means any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis. `Nonrecurring or unsustainable income or cash flow item' does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise utilizes to produce income or cash flow for a period of more than three years."
{¶ 36} With regard to shareholder loans, the magistrate determined that it was appellant's business practice for the S corporations that appellant founded — Art Zone and Impulse Wear — to pay appellant's expenses, such as attorney fees, loan payments, house payments, and interest payments. The magistrate concluded that "these shareholder loans are cash flow items to Defendant and should be included for child support purposes because they reduce Defendant's otherwise personal expenses." The magistrate only considered shareholder loans from 1999, however, as she only calculated income for 1999.
{¶ 37} In its decision, the trial court stated that "[a]lthough a shareholder loan normally would not be considered income, the Court agrees with the magistrate's analysis and holds that the amounts of the shareholder loans should be considered income in this case." In calculating income for 1997, the trial court included $136,000 in shareholder distributions, a $50,000 shareholder loan from Art Zone and a $136,754 shareholder loan from Impulse Wear. In calculating income for 1998, the trial court included $22,000 in shareholder distributions, a $85,000 shareholder loan from Art Zone, and a $149,636 shareholder loan from Impulse Wear. In calculating income for 1999, the trial court included a $38,379 shareholder loan from Impulse Wear.
{¶ 38} Appellant takes issues with the inclusion of any of these sums as income on the basis that they were nonrecurring items. Appellant specifically argues that nearly $120,000 in the total amount of shareholder loans in 1997 and 1998 was used for the payment of life insurance premiums on behalf of appellant and, because appellant was not the beneficiary of those premium payments and because the practice stopped after 1998, the trial court erroneously included those funds in calculating income. Appellant also argues that some of appellant's loans from Art Zone were transferred to the books of Impulse Wear when appellant dissolved Art Zone.
{¶ 39} We conclude that the court was within its discretion to include the shareholder distributions and shareholder loans in calculating gross income. The record supports the finding by the magistrate, and adopted by the trial court, that appellant used distributions and loans on a regular basis as a means of payment for appellant's personal expenses. In his brief to this court, appellant has not cited us to any portion of the record that establishes that he repaid any of the shareholder loans. Based upon our independent review of the record, we note that, in 1999, appellant repaid $5,500. The trial court, however, excluded the repaid amount when it calculated 1999 income. While appellant testified that he does not expect to receive additional shareholder loans in the specific form of payment for life insurance premiums, the record demonstrates an ongoing practice whereby shareholder loans funded appellant's personal expenses in one form or another and, based upon this record, we conclude that the trial court was within its discretion to impute income to appellant based upon the loans and distributions. See Zimmer v. Basil (Jan. 30, 1995), Butler App. No. CA94-02-050 (concluding that the domestic relations court did not err in imputing income to business owner who received $3,000 to $4,000 in what was characterized as stockholder loan repayments from his corporation, where owner directed the business of his corporation).
{¶ 40} Based upon the record and upon the specific circumstances in this case, which includes evidence that appellant had a habitual practice of utilizing shareholder loans for personal expenses and no corresponding practice of repaying the loans, we conclude that the trial court was within its discretion to find that appellant could expect to receive similar cash flow on a regular basis. In reaching this conclusion, we note that appellant is entitled to file a motion to modify the child support order should this practice change in the future.
{¶ 41} Appellant also argues that the trial court erred when it imputed bonus income to appellant. We agree.
{¶ 42} R.C. 3113.215(B)(5) provides as follows with regard to bonus income:
{¶ 43} "(d) When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
{¶ 44} "(i) The yearly average of all overtime and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
{¶ 45} "(ii) The total overtime and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
{¶ 46} In calculating appellant's income, the trial court found that appellant had $0 in bonus income in 1997, $60,000 in bonus income in 1998, and $201,000 in bonus income in 1999. The court calculated a three-year average of $87,133 in bonus income and applied $87,133 in average bonus income to the overall gross income calculations for each of 1997, 1998 and 1999.
{¶ 47} We conclude that this method runs afoul of the statutory requirement. Although the yearly average of bonuses received during the three years immediately prior to 2000 ($87,000) is indeed less than the total bonus received in 1999 ($201,000), the statute contemplates that, under these circumstances, the trial court would add $87,133 in average bonus income to calculate gross income in 1999, and not in 1998 and 1997.
{¶ 48} For the foregoing reasons, we sustain appellant's first assignment of error. Upon remand, the trial court shall calculate a child support award in accordance with the mandatory provisions in R.C. 3113.215. To meet the statutory requirements, the trial court shall utilize child support worksheets. In completing the worksheets, the court shall calculate bonus income in accordance with R.C. 3113.215(B)(5).
{¶ 49} By his second assignment of error, appellant contends that the trial court erred in finding that appellant had rental income in excess of his rental expenses. Alternatively, appellant argues that the trial court erroneously failed to consider additional testimony from appellant's tax accountant.
{¶ 50} Appellant had testified in the hearing before the magistrate that rental payments received on property he owned were equal to mortgage payments and, therefore, the property did not generate additional income in excess of the mortgage obligations. Citing to appellant's 1997 and 1998 tax returns, however, the magistrate concluded that appellant received rental payments in excess of mortgage obligations, and the magistrate credited appellant with rental income. After appellant received the magistrate's decision, he provided the court with the affidavit of his accountant, Howard Geiss, who testified that his firm had made a mistake when it prepared appellant's tax returns and that appellant did not receive additional rental income in 1998. The trial court concluded that the additional evidence in Geiss' affidavit could have been obtained with reasonable diligence at the time of the hearing before the magistrate. The trial court therefore refused to consider the additional evidence proffered in Geiss' affidavit.
{¶ 51} Citing to Schottenstein v. Schottenstein (Nov. 29, 2001), Franklin App. No. 00AP-1088, appellant contends that the trial court should have considered the additional evidence in Geiss' affidavit regarding the issue of rental income. Appellant argues that Schottenstein requires that the court take additional evidence because there was a substantial lag between the time that the magistrate heard the evidence and the time the trial court considered appellant's objections, and the trial court was aware of additional facts that could not have been presented to the magistrate.
{¶ 52} We conclude that Schottenstein differs from the instant action for a variety of reasons. In Schottenstein, the court concluded that the trial court was obligated to interview minor children and take additional evidence before deciding issues related to child custody. In reaching its conclusion, the Schottenstein court noted that R.C.3109.04(B)(1) requires the court, upon request of either party, to interview the children regarding their wishes and concerns with respect to allocation of parental rights. The court further noted that there had been "turmoil and changing circumstances" involving the children after they had been interviewed by the magistrate, but before the trial court had the opportunity to rule upon the parties' objections to the magistrate's decision.
{¶ 53} In contrast, the instant matter involves alleged additional evidence regarding child support, not the allocation of parental rights. Accordingly, the interview requirements in R.C.3109.04(B)(1) do not apply. Further, the record demonstrates that, unlike the situation in Schottenstein, the additional evidence proffered by appellant was available at the time of the hearing before the magistrate.
{¶ 54} Howard Geiss testified at the hearing and appellee's attorney expressly asked him about the increase in rental income:
{¶ 55} "Q. All right. Do you know any of the details with regards to the leases associated with these buildings?
{¶ 56} "A. Not really. I know rent is paid from Impulse Wear to this partnership of the two of them.
{¶ 57} "Q. Okay. And then out of that rent, the expenses are paid. Now, if you would bear with me and take a look at schedule E for 1998, under Exhibit 3, which appears on page 23.
{¶ 58} "A. Yes.
{¶ 59} "Q. On line 3 of the 1997 return, rent is listed as $81,000?
{¶ 60} "A. Correct.
{¶ 61} "Q. Then on line 3 of the 1998 return, rent is listed at $107,737.
{¶ 62} "A. Correct.
{¶ 63} "Q. Could you tell me what is the reason for the twenty plus thousand dollar difference?"
{¶ 64} "A. I frankly don't know.
{¶ 65} "Q. You don't know. You don't know if it was an increase in rent?
{¶ 66} "A. I don't know if it was an increase or timing differences. I know the building was expanded, but — I would presume in 1998, the rent would go up accordingly." (Tr. at 66-67.)
{¶ 67} In response to additional questions from the magistrate regarding the increase in rental income, Geiss testified that the amount of rent reported on Schedule E of appellant's 1998 tax return represented appellant's proportional share of rent in light of the fact that appellant owned 75% of the property at issue.
{¶ 68} Civ.R. 53(E)(4)(b) provides that "[t]he court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." Appellant has not demonstrated that, with reasonable diligence, he could not have produced evidence at the hearing. The hearing continued for several days after Geiss testified about the increase in rental income as reflected on appellant's 1998 tax return and, during this time, appellant had the opportunity to offer an explanation. Although appellant now argues that his accountant uncovered an error after the hearing, the error existed and could have been determined at the time of the hearing. Appellant has not demonstrated that any of the underlying facts with regard to the rental payments changed after the hearing. Appellant's second assignment of error is overruled.
{¶ 69} By this third assignment of error, appellant contends that the divorce decree credited appellant with $21,319.75 in separate property and that the trial court erred in failing to credit appellant with the value of this separate property.
{¶ 70} Appellant's argument pertains to the following language in the Judgment Entry — Decree of Divorce:
{¶ 71} "The court FINDS that the parcel of real estate located at 4046 Prince George Lane, New Albany, Ohio is marital property except for the Twenty-one Thousand Three Hundred Nineteen and 75/100 Dollars ($21,319.75) separate property which Defendant has traced into such real estate. Further, the court FINDS that the mortgage indebtedness associated with such real estate is marital debt. Nevertheless, such parcel of real estate shall be awarded to the Plaintiff and Defendant is ORDERED to pay the mortgage indebtedness thereon by continuation of the two installment payment schedules minus taxes and insurance costs as for spousal support."
{¶ 72} According to appellant's interpretation of this language in the divorce decree, the court credited appellant with $21,319.75 in separate property and, therefore, appellant was entitled to exempt $21,319.75 from monies he owed to appellee under the property settlement terms of the divorce decree. We disagree.
{¶ 73} We conclude that, by its express language in the divorce decree, the trial court had awarded the entire parcel of real estate at 4046 Prince George Lane to appellee, notwithstanding the facts that (1) defendant had traced $21,319.75 in separate property into that parcel, and (2) the mortgage was marital debt. We note that the word "nevertheless" modifies the two preceding sentences, as those sentences are connected by the word "further." Accordingly, pursuant to the divorce decree, although appellant traced $21,319.75 in separate property and although the mortgage is marital debt, the trial court awarded the entire parcel to appellee and ordered appellant to pay the mortgage indebtedness on the entire parcel. Appellant's third assignment of error is overruled.
{¶ 74} By his fourth assignment of error, appellant argues that the trial court erred in failing to credit appellant with the $13,250 award that appellee was ordered to pay to appellant in satisfaction of appellant's motions for frivolous conduct.
{¶ 75} With regard to this award, the trial court's July 3, 2001 judgment entry states as follows:
{¶ 76} "Pursuant to the agreement of the parties, the court orders that Plaintiff pay Defendant the sum of $13,250. Said sum shall be payable only as a credit against any money owed by Defendant to Plaintiff arising from the Magistrate's Decision. The credit shall be applied after the court has ruled upon the objections."
{¶ 77} Appellant contends that the trial court erred in its instant judgment entry because it failed to include this credit as an offset in its award. We disagree. Although the July 3, 2001 judgment entry provides appellant with an enforceable credit, the entry did not require a set off against the instant judgment. Accordingly, we overrule appellant's fourth assignment of error.
{¶ 78} For the foregoing reasons, we sustain appellant's first assignment of error and overrule appellant's second, third and fourth assignments of error. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part. Upon remand, the trial court shall calculate and award child support in accordance with the procedures set forth in R.C. 3113.215.
Judgment affirmed in part, reversed in part and case remanded.
TYACK, P.J., and KLATT, J., concur.
[1] At the time of the hearing, R.C. 3113.215 governed the procedures a trial court must follow when calculating a child support award. We acknowledge that R.C. 3113.215 was repealed, effective March 22, 2001, and replaced by R.C. 3119.01, et seq.; however, this court will review appellant's assignment of error, pursuant to R.C. 3113.215, which was the statute in effect at the time of the hearing.